## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ELIZABETH SANKEY,<br>　　　Plaintiff,<br><br>　　　v.<br><br>UTGR, INC. d/b/a TWIN RIVER, Alias,<br>TWIN RIVER MANAGEMENT<br>GROUP, INC., Alias; and JOHN DOE,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　　C.A. No. 19-634-JJM-PAS<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Elizabeth Sankey sued UTGR, Inc. d/b/a Twin River and Twin River Management Group, Inc. ("Twin River") alleging claims of false arrest, malicious prosecution, defamation, false light, and intentional infliction of emotional distress arising out of the events surrounding her arrest while she was working at Twin River. Twin River now moves for summary judgment on all claims. ECF No. 17.

## I.　BACKGROUND

Elizabeth Sankey is an employee at Twin River. ECF No. 18 ¶ 1. On October 21, 2017, Twin River's Surveillance Department provided the Rhode Island State Police Gaming Enforcement Unit ("GEU") with a surveillance video depicting another Twin River employee ("Co-worker"), engaged with Ms. Sankey in suspected narcotics

activity.[1]  *Id.* ¶ 8.  GEU did not take immediate legal action against either Ms. Sankey

or the Co-worker instead opting to instruct Twin River's Surveillance Department to

initiate a close watch on the Co-worker.  *Id.* ¶ 9.  A month later, the Surveillance

Department once again observed the Co-worker handing prescription pills to another

casino employee.  *Id.* ¶ 10.  Upon his arrest, the Co-worker provided a recorded

statement in which he stated that he had provided Ms. Sankey with Adderall pills

upon her request in the manner depicted in the October video.  *Id.* ¶ 12.

Rhode Island State Police arrested Ms. Sankey and charged her with one count

of Possession of a Controlled Substance.  *Id.* ¶ 13.  As a result, Twin River terminated

Ms. Sankey's employment.  *Id.* ¶ 20.  After Ms. Sankey's attorney argued the charge

should be dismissed because the contents of the napkin were never tested to confirm

---

[1] In an affidavit filed two months after the video was captured, GEU Detective
Andrew Emerson described the exchange he observed between Ms. Sankey and the
Co-worker as follows:

> [A]t 4:13pm, [the Co-worker] is observed on surveillance footage
> removing a prescription pill bottle from the shelves at service bar 3,
> while working as a beverage server at Twin River Casino.  Your affiant
> further observed [the Co-worker] remove an unknown number of pills
> from the bottle and place them into a napkin and fold the napkin so the
> pills were secure.  {The Co-worker] then moves to the center island of
> the service bar and places the bundled napkin containing the pills into
> a black purse on a lower shelf by the bartender station.  The purse
> belonged to service bar 3 bartender, Elizabeth Sankey, who was present
> at the time this occurred.  Elizabeth Sankey is seen on surveillance
> footage moving the napkin deeper into her purse, so that it would no
> longer be in plain view.

ECF No. 18 ¶ 2.

it was a controlled substance, the charge was dismissed a few months later. *Id.* ¶¶ 13, 14.

Ms. Sankey, a member of a union, demanded arbitration under the collective bargaining agreement. *Id.* ¶ 21. The arbitrator concluded that Twin River did not have probable cause to suspend Ms. Sankey's employment because the Co-worker's statement to the GEU was unreliable hearsay. *Id.* ¶ 23. The Co-worker did not testify at the arbitration hearing. *Id.* ¶ 22. She ordered Twin River to reinstate Ms. Sankey's employment and "make her whole for all lost wages and benefits." *Id.* ¶ 24. Twin River complied with the arbitrator's final decision. *Id.* ¶ 25.

Ms. Sankey commenced this lawsuit against Twin River for additional money damages. Ms. Sankey alleges claims for false arrest, malicious prosecution, defamation, false light, and intentional infliction of emotional distress. Twin River moved to dismiss under Federal Rules of Procedure Rule 12(b)(6). ECF No. 5. The Court denied the motion. ECF No. 9. Now ripe for decision is Twin River's Motion for Summary Judgment on all claims. ECF No. 17.

## II.   STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the non-moving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). "Granting summary judgment is appropriate if the moving party 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ophthalmic Surgeons, Ltd. v. Paychex,*

*Inc.*, 632 F.3d 31, 35 (1st Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Ingram v. Brink's, Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005). "In the summary judgment context, 'genuine' has been construed to mean 'that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.' Similarly, a fact is 'material' if it is 'one that might affect the outcome of the suit under the governing law.'" *Enica v. Principi*, 544 F.3d 328, 336 (1st Cir. 2008) (citations omitted).

## III.   DISCUSSION

Twin River advances four defenses to Ms. Sankey's five tort claims. Two are based on qualified immunity and conditional privileges, one is rooted in labor law preemption, and the last covers the traditional summary judgment grounds. The Court finds that Ms. Sankey's claims fail as a matter of law; as such, the Court declines to address Twin River's immunity defenses and shifts directly to the substance of Twin River's arguments in favor of summary judgment.

### A.   Defamation and False Light Claims

Ms. Sankey alleges that Twin River defamed her by making false representations about the surveillance video to the GEU. She supports her false light claim with news articles published about her arrest that include statements she asserts are false. Twin River denies liability for these claims and further argues that

4

it is immune as it was privileged to pass on information to the GEU about suspected criminal activity taking place on its property.  Because defamation and false light claims are related, the Court will discuss them together.

To prove a defamation claim, a plaintiff must show evidence of "(1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages. . .." *Cullen v. Auclair*, 809 A.2d 1107, 1110 (R.I. 2002). As to the first element, "[a]ny words, if false and malicious, imputing conduct which injuriously affects a [person's] reputation, or which tends to degrade him [or her] in society or bring him [or her] into public hatred and contempt, are in their nature defamatory." *Swerdlick v. Koch*, 721 A.2d 849, 860 (R.I. 1998) (citing *Elias v. Youngken*, 493 A.2d 158, 161 (R.I. 1985)).  "Whether the meaning of a particular communication is defamatory is a question of law for the court to decide rather than a factual issue for a jury to determine." *Beattie v. Fleet Nat'l Bank*, 746 A.2d 717, 721 (R.I. 2000) (citing *Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989)).

A plaintiff establishes a false light claim by showing that "[t]here has been some publication of a false or fictitious fact which implies an association which does not exist; [and][t]he association which has been published or implied would be objectionable to the ordinary reasonable man under the circumstances." R.I. Gen. Laws § 9–1–28.1(a)(4)(i)(A)(B); *Swerdlick*, 721 A.2d at 861.  "Unlike defamation, a false-light action requires that a plaintiff be 'given unreasonable and highly

5

objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position.'" *Swerdlick*, 721 A.2d at 861 (quoting Restatement (Second) *Torts*, § 652E cmt. *b*, at 395).

Ms. Sankey has produced no evidence that Twin River made false and malicious statements about her, so her claims fail on the first element.  It is undisputed that Twin River alerted the GEU to suspected drug activity at the casino by turning over the surveillance video of the Co-worker placing the pills securely into a napkin, putting the bundled napkin into Ms. Sankey's purse, and Ms. Sankey pushing the napkin deeper into her purse. ECF No. 18 ¶ 2.  The GEU took no action against Ms. Sankey at that time but instructed Twin River to continue to surveil the Co-worker (not Ms. Sankey).  Once arrested for providing pills to another co-worker, the Co-worker admitted to providing Ms. Sankey with Adderall as seen in the surveillance video. *Id.* ¶ 12.  Ms. Sankey conceded at her deposition that the Co-worker admitted to putting the Adderall into her purse as described in the incident report. *Id.* ¶ 17.  It was this testimony, along with the video itself, that led the GEU to arrest Ms. Sankey and charge her with one count of Possession of a Controlled Substance.[2]  There is no dispute that Twin River's decision to provide State Police with the surveillance video was not itself a false, defamatory, or malicious statement.  Furthermore, there is no evidence that Twin River published a false or fictitious fact about Ms. Sankey.  Ms. Sankey points to news articles published about her arrest,

---

[2] The charges were later dismissed for lack of evidence in support of the possession element of the charged offense.  ECF No. 18 ¶ 13.

but there is no evidence that Twin River was responsible for the publication of those articles.

Ms. Sankey argues that Twin River's statements were false because the state Attorney General dropped the charges against her, and the Arbitrator found that Twin River did not have probable cause to fire her based on the video alone. Neither the outcome of the criminal investigation nor the Arbitrator's conclusion impacts whether Twin River's statement was false, defamatory, or malicious. The Attorney General's decision making on criminal charges is discretionary and it is undisputed that the Arbitrator considered the Co-worker's testimony implicating Ms. Sankey hearsay because he did not testify in person at the arbitration hearing. Therefore, the Court dismisses Ms. Sankey's defamation and false light claims.

## B.   Malicious Prosecution and False Arrest

Ms. Sankey claims that Twin River arrested her wrongfully and without probable cause in part because of her past union activities. ECF No. 18 ¶¶ 15, 18, 19. Twin River moves for summary judgment, arguing that she cannot meet the elements of either claim. The Court agrees and will briefly explain.

A false arrest claim requires proof that "(1) the defendant intended to confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Dyson v. City of Pawtucket*, 670 A.2d 233, 239 (R.I. 1996). She also must show that "she was detained without legal justification." *Id.* Malicious prosecution is defined "as a suit for damages resulting from a prior criminal or civil legal proceeding that

was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein. * * * The plaintiff must establish 'clear proof of malice and lack of probable cause." *Horton v. Portsmouth Police Dep't*, 22 A.3d 1115, 1121 (R.I. 2011) (citations omitted).

As to the false arrest claim, Twin River did not arrest or confine Ms. Sankey, the Rhode Island State Police did.  There is no evidence that Twin River acted with any malice or ill will in how it investigated the Co-worker and Ms. Sankey, or in its decision to report the Co-worker's activity and provide surveillance video to the GEU. Regarding her union activities, Ms. Sankey testified that a Twin River representative swore at her in a mean voice after she had threatened to start a strike while advocating for union members' health care demands.  It is undisputed, however, that Ms. Sankey has no evidence that her arrest was a result of these union activities. ECF No. 18 ¶ 18.  Ms. Sankey's false arrest and malicious prosecution claims fail because she has not produced any evidence – disputed or undisputed – of the required elements.  The Court dismisses them.

### C.    Intentional Infliction of Emotional Distress

Ms. Sankey argues that she has suffered emotional distress because of Twin River's intentional acts.  Twin River moves for summary judgment on this claim because she has not presented any evidence of physical symptomology resulting from such distress.

An intentional infliction of emotional distress claim requires that "'(1) the conduct must be intentional or in reckless disregard of the probability of causing

emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe.'" *Swerdlick*, 721 A.2d at 862–63 (R.I. 1998) (quoting *Champlin v. Washington Trust Co. of Westerly*, 478 A.2d 985, 989 (R.I.1984)). A plaintiff also must show "some proof of medically established physical symptomatology." *Swerdlick*, 721 A.2d at 863.

Ms. Sankey has presented no evidence of any of the elements of this claim. Twin River's decision to turn the surveillance videos over to the Rhode Island State Police was not extreme and outrageous; in fact, it was in response to its perception of the Co-worker's criminal activity at the casino. Considering the Co-worker's ultimate confession of his conduct to police and implication of Ms. Sankey's alleged complicity, there is insufficient evidence to conclude that Twin River's report was intentional or in reckless disregard of Ms. Sankey's emotional health. The Court dismisses Ms. Sankey's intentional infliction of emotional distress claim.

## IV. CONCLUSION

Ms. Sankey's claims cannot withstand Twin River's Motion for Summary Judgment. ECF No. 17. The Court GRANTS the motion and DISMISSES Ms. Sankey's case.

IT IS SO ORDERED.

_____

John J. McConnell, Jr.
Chief Judge
United States District Court

October 6, 2021